# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:10cv494

| | |
|---|---|
| NATELA MCKOY, | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) MEMORANDUM |
| | ) OF DECISION |
| CHARLOTTE-MECKLENBURG SCHOOLS, | ) |
| Defendant. | ) |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment (#9). In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), plaintiff, who is proceeding *pro se*, was cautioned that she carries a heavy burden in responding to a motion for summary judgment. Order (#11). In such Order, the court explained the applicable rule, instructed plaintiff on the method for filing a response and affidavits, and allowed her until April 29, 2011, to file her response. On that date, plaintiff did not file a response, but instead filed a "Motion to Continue With Mediation" (#14), in which she requests that the parties be required to mediate despite the court having previously Ordered on April 13, 2011, that mediation be cancelled. Order (#13). No request was made in such motion for enlargement of the more than 30 days allowed for response. The court has carefully considered such motion and finds it to be unresponsive to the Motion for Summary Judgment.

Having carefully considered defendant's motion and determined that no genuine issue of material fact remains for trial and that defendant is entitled to the judgment it seeks as a matter of law, the court enters the following findings, conclusions, and Order.

# FINDINGS AND CONCLUSIONS

## I. Applicable Standard

### A. Summary Judgment

Despite plaintiff's lack of response, the court has carefully considered the merits of defendant's motion to determine whether genuine issues of material fact exist and, if so, whether defendant is entitled to judgment as a matter of law. Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for plaintiff to use in responding to a Motion for Summary Judgment:

> **(c) Procedures.**
> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.

> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion

for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

### B. Pro Se Litigants

Although district courts must liberally construe *pro se* complaints, courts cannot act as the *pro se* plaintiff's advocate and cannot develop claims which the plaintiff failed to clearly raise on the face of the Complaint. Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff). See also Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). As a result, even a *pro se* plaintiff's basis for relief "requires more than labels and conclusions...." Twombly, 550 U.S. at 555. Like plaintiffs who are represented by counsel, a *pro se* plaintiff must still "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). In light of Twombly and Bass, conclusory statements with insufficient factual allegations, even when asserted by *pro se* plaintiffs, will simply not suffice.

## II. Discussion

### A. Relevant Facts

In her Complaint, plaintiff asserts claims against defendant under Title VII of the Civil Rights Act of 1964 on the basis of race (African-American) and color. The claims relate to

plaintiff's employment at Mallard Creek High School during the 2007-08 and 2008-09 school years. Affidavit of Katherine Rea ("Rea Aff."), ¶ ¶ 2-4 (Ex. 1 to Defendant's Motion). Plaintiff was employed at such school as an "exceptional children's teacher." Id. End-of-year testing at the conclusion of the 2007-08 school year revealed deficiencies in some areas of instruction, including the instruction of exceptional children. Rea Aff., at ¶ 5.

Katherine Rea was the principal at such school at times relevant times to this action. Id., at ¶ 3. After she received the results of the end-of-year testing, Rea avers that she decided that the school would emphasize increasing the quality of instruction during 2008-09 school year, and that the areas that had performed most poorly on the tests would receive the most attention. Id., at ¶ 8. Rea outlines a number of deficiencies in plaintiff's classroom performance during that school year based on observations of others[1] and herself, id., at ¶¶ 10-25, ultimately resulting in rating plaintiff as performing below standard and a recommendation that her contract not be renewed for the 2009-10 school year. Id., at ¶ 26.

Principal Rea avers that plaintiff was not singled out. During the 2008-09 school year, she placed four white teachers, three African-American teachers, and one Hispanic teacher on "action plans." Id., at ¶ 28. Of these teachers, only two African-American and one white teacher successfully completed their action plans, and that all teachers who did not successfully complete their plans were not renewed for the following school year. Id. From this evidence, the court has drawn the reasonable inference that African-American teachers successfully completed their action plans at a higher rate (66.6%) than white teachers (25%) or Hispanic teachers (0%).

---

[1] Principal Rea also avers that an assistant principal, who is also African-American, observed plaintiff in the classroom and rated her performance as satisfactory. Rea Aff., at ¶ 10.

Plaintiff filed her first charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") on January 12, 2009, while still employed by defendant. Defendant's Ex. 2. In that charge, plaintiff alleged that the classroom evaluations she had received and had resulted in her placement on an action plan were discriminatory acts. Rea Aff., Attachment 8. The day following such charge, plaintiff received her mid-year evaluation in which she received a rating of "below standard," Rea. Aff., at ¶ 19, Attachment 9, and Principal Rea placed plaintiff on notice that her contract might not be renewed for the following year.

After receiving such evaluation, plaintiff filed her second charge of discrimination on January 29, 2009, asserting that in receiving the negative mid-year evaluation, she was being retaliated against for filing the first charge and that Principal Rea was "watching her." Defendant's Ex. 3. There is no assertion or evidence that Principal Rea knew the charge had been filed prior to issuing the evaluation.

Four days later, plaintiff filed a grievance with defendant alleging that her evaluation and action plan were improper. Rea Aff., at ¶ 20, Attachment 10. Janet Hamilton, the Executive Director of defendant's Employee Relations Department (who is also African-American) investigated plaintiff's allegations and concluded that there was nothing wrong with the observation or the decision to place plaintiff on an action plan, concluding that her complaints were without merit. Affidavit of Hamilton, at ¶ 5. A letter was sent to plaintiff regarding Director Hamilton's determination. Hamilton Aff., Attachment 2.

In March 2009, a classroom observation of plaintiff was performed by Interim Assistant Principal Jennifer Smith (who is also African-American). She rated plaintiff as "below standard" in four categories. Rea. Aff., Attachment 11. As a result, plaintiff's action plan was extended and revised. Id., at ¶ 22, Attachment 13.

As discussed briefly above, the final classroom observation of the year was conducted by Principal Rea, who stayed for the entire class. Id., at ¶ 23. Of the eight performance categories, plaintiff was rated as "below standard" in four. Id., at ¶ 25, Attachment 16. On April 21, 2009, plaintiff was rated as performing "below standard" in her year-end appraisal, id., at ¶ 26, Attachment 17, and Principal Rea recommended that plaintiff's contract not be renewed for the following school year. Id.

On April 22, 2009, plaintiff filed her third charge of discrimination with the EEOC. Defendant's Ex. 5. In that charge, she asserted generic "retaliation" for the filing of her two previous charges of discrimination. Id.

Finally, plaintiff reported in late May 2009 that she had seen a picture of a Ku Klux Klansman that had been placed on a table in the school library. Complaint, at 10.; Rea Aff., at ¶ 27. School system law enforcement was advised of and investigated the incident; however, law enforcement officials could not determine whether or not the picture had been left for plaintiff or who had left it. Rea Aff., at ¶ 27.

On June 11, 2009, defendant notified plaintiff that her contract would not be renewed Hamilton Aff., at ¶ 8, Attachment 4. Plaintiff's non-renewal was, however, lumped in with the school system's "reduction in force" that occurred that summer as the school system decided to include the non-renewals with the layoffs to make it easier for all these teachers to draw unemployment benefits. Hamilton Aff., at ¶ 7.

**B.    Plaintiff's Claim of Racial Discrimination**

Plaintiff first alleges that she was discriminated against based on her race, African - American. Complaint, at 3 & 7. Plaintiff has presented absolutely no direct evidence of discrimination; thus, to survive summary judgment, plaintiff must establish a prima facie

case of discrimination under a burden shifting analysis. If the plaintiff establishes a prima facie case, the burden shifts to the employer to show that there were legitimate non-discriminatory reasons for the employment decisions. If an employer satisfies that requirement, the burden then shifts back to the plaintiff to show that the employer's proffered reasons are false and a pretext to conceal intentional unlawful discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To establish a prima facie case of racial discrimination in the context of an adverse employment action, plaintiff must show that she (1) is a member of a protected class, (2) was performing her job satisfactorily, (3) suffered an adverse employment action, and (4) was treated differently than similarly situated employees outside her protected class. Id., at 802.

The court concludes that plaintiff has satisfied the first element. As to the third element, only plaintiff's claim that her contract was not renewed is an adverse employment action. While plaintiff has alleged numerous events which she considers to be adverse employment actions, the only cognizable adverse employment action is the defendant's decision not to renew her contract. As the Court of Appeals for the Fourth Circuit determined:

> Honor's remaining allegations involve a negative employment evaluation he received and the fact that he was ostracized by certain employees. Neither claim rises to the level of an adverse employment action. The activity of other employees did not adversely affect the terms, conditions, or benefits of Honor's employment. *See Von Gunten*, 243 F.3d at 864-66; *see also Munday v. Waste Management, Inc.*, 126 F.3d 239, 243 (4th Cir.1997) ("In no case in this circuit have we found an adverse employment action to encompass a situation where the employer has instructed employees to ignore and spy on an employee who engaged in a protected activity.").

Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 189 (4th Cir. 2004).

She has failed, however, to present any evidence that would satisfy her burden as to the second element, to wit, that her performance as a teacher of exceptional children was

satisfactory to her employer. The only record evidence indicates that plaintiff did not meet those expectations, as outlined at length above. Further, she has presented no evidence that she was treated differently than those outside her protected class. Indeed, the only race-based evidence presented originates from defendant and indicates that African-Americans successfully completed action plans in the 2008-09 school at a rate nearly three times higher than white employees.

Even if plaintiff had been able to present evidence of a prima facie case, defendant has presented a legitimate, non-discriminatory reason for its employment decision, to wit, unsatisfactory job performance. Job performance is widely recognized as a valid, non-discriminatory basis for any adverse employment decision. Evans v. Technologies Applications & Service Co., 80 F.3d 954, 960 (4th Cir. 1996). The burden would then shift back to plaintiff to show that such reason is a mere pretext and that the real reason plaintiff's contract was not renewed was because of her race. Plaintiff has failed to rebut such proffer.

In considering the prima facie case and rebuttal of defendant's legitimate, non-discriminatory reason, the court has carefully considered the allegations of the Complaint, which include allegations that African-American teachers in the exceptional children department were rated below standard, while white employees in the same department were not. This is a serious charge. Plaintiff has, however, not come forward with any evidence to support her claim making such contention conclusory as it is based merely on plaintiff's own speculation. The case law is clear in the Fourth Circuit that speculation and conjecture raise a mere possibility of discrimination rather than the reasonable probability which is necessary to support an inference of discrimination. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241-42 (4th Cir. 1982). Speculative assertions that a defendant's motivation was unlawful is not enough to withstand summary judgment, Goldberg v. B. Green and Co., 836

F.2d 845, 848 (4th Cir. 1988), and conclusory statements will not satisfy plaintiff's burden in responding to the motion for summary judgment. Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211 (4th Cir. 1987). Unsupported allegations "do not confer talismanic immunity from Rule 56." Ross v. Communications Satellite Corp., 759 F.2d 355, at 365 (4th Cir. 1985). More specifically, the Fourth Circuit in several cases has consistently held that feelings or perceptions of discrimination by the employee are irrelevant:

> we have repeatedly explained that "'[i]t is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." Accordingly, the plaintiff's "perception of [her]self . . . is not relevant." Similarly, that plaintiff's coworkers may have thought that [she] did a good job, or that [she] did not 'deserve' [to be discharged], is close to irrelevant."

DeJarnette v. Corning Incorporated, 133 F.3d 293 (4th Cir. 1998)(citations and quotations omitted). It is undisputed that the only decision makers in this case were Principal Rea and the school board, which acted on her recommendation. Plaintiff has provided the court with no evidence that either took action based on plaintiff's race. To the contrary, the only evidence of record points to race playing no role in the ultimate decision to not renew plaintiff's contract. Thus, plaintiff has not proffered evidence upon which she could show by a preponderance that poor job performance was pretext for race discrimination.

The court will, therefore, grant summary judgment in favor of defendant on plaintiff's Title VII claim of race discrimination.

**C.    Plaintiff's Claim of Retaliation for Engaging in Protected Activity**

Plaintiff also alleged that defendant retaliated against her for filing charges of discrimination, all in violation of Title VII. Complaint, at 4. To make out a *prima facie* case of retaliation, plaintiff must now present evidence that could show that:

(1)    she engaged in protected activity;

(2) she was subjected to an adverse employment action; and

(3) a causal relationship existed between the first two elements.

Munday v. Waste Management, 126 F.3d 239, 242 (4th Cir. 1997). As discussed above, if a plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Upon such a showing by the employer, the burden would then shift back to the plaintiff to show by a preponderance of the evidence that the legitimate reasons offered by the employer were not true reasons, but were pretext for retaliation. Id. To make such a showing, the plaintiff must prove that "but for" the protected conduct, the adverse employment action would not have occurred.

For the purposes of this discussion, the court finds the first two elements have been satisfied. Plaintiff, however, has presented no evidence of any causal link between the first two elements that would satisfy the third element of a *prima facie* case. Close temporal proximity between the first two elements has been held to satisfy the third element. See Carter v. Ball, 33 F.3d 450, 470 (4th Cir. 1994) (five months); Williams v. Cerberonics, Inc., 871 F.2d 452 (4th Cir. 1989) (four months). In this case, there is no evidence that defendant or Principal Rea had any knowledge that plaintiff had filed a charge of discrimination the day before midyear teacher evaluations came out in January 2009. As a result, no causal connection exists between the first charge and the mid-year appraisal.[2] Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656-57 (4th Cri. 1998)("an employer cannot take action because of a factor of which it is unaware....").

---

[2] As discussed above, the only adverse employment action was the decision not to renew plaintiff's contract. This discussion should not be read as an endorsement of the issuance of an employee evaluation as being an adverse employment action - - it simply is not under current case law as cited supra.

Turning to the timing of the decision not to renew her contract, the only evidence of record is that plaintiff had received a below standard classroom observation and been placed on an action plan well before she filed her first charge of discrimination in January 2009. Other than plaintiff's own speculation, there is no evidence of record of any causal connection between plaintiff engaging in protected activity and the defendant's decision not to renew her contract. Further, under the burden shifting analysis, even if plaintiff had come forward with sufficient evidence to prove a *prima facie* case of retaliation, defendant has come forward with a legitimate, nondiscriminatory reason for the action it took, which plaintiff has not rebutted.[3]

Plaintiff has presented no evidence, only her own speculation, that such decision was pretextual. Speculation and conjecture raise a mere possibility of discrimination rather than the reasonable probability which is necessary to support an inference of discrimination. Lovelace v. Sherwin-Williams Co., supra. Speculative assertions that a defendant's motivation was unlawful is not enough to withstand summary judgment, Goldberg v. B. Green and Co., supra; and conclusory statements will not satisfy plaintiff's burden in responding to the motion for summary judgment. Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., supra. Unsupported allegations "do not confer talismanic immunity from Rule 56." Ross v. Communications Satellite Corp., supra.

Finding that plaintiff has failed to establish a causal connection between the first two elements, the court will grant the Motion for Summary Judgment as to such claim as plaintiff has not established a *prima facie* case. Alternatively, if plaintiff could have established a *prima facie* case, the court finds that summary judgment is also appropriately entered against

---

[3] The court will not repeat the analysis, which would be identical to the analysis as to plaintiff's claim of discrimination based on race.

plaintiff as defendant has articulated a legitimate, nondiscriminatory reason for her discharge, which plaintiff has not shown to be pretextual.

**D.     Plaintiff's Claim of Racial Harassment and Hostile Work Environment**

Plaintiff also alleges that she was harassed and subjected to a hostile work environment based on her race. Complaint, at 3 & 7.  To prove a *prima facie* case of hostile work environment based on racial harassment, it is plaintiff's burden to show this court that: (1) there was unwelcome harassment; (2) the harassment was based on race; (3) the harassment was so severe or so pervasive that it altered the conditions of employment and created an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.  Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998). In determining if the third element of the *prima facie* case is met, the frequency and severity of the harassment, whether it was physically threatening or humiliating, whether it reasonably interfered with work performance, and whether it resulted in physical harm are all considered. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  Severity is judged from the perspective of a reasonable person in plaintiff's position, considering all the circumstances.  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).

With one exception, all of the alleged acts of harassment relate to the action plan, the negative performance evaluations given, and the decision to not renew her contract. The exception concerns the picture of a Klansman plaintiff purportedly found on a table in the school library; however, such incident was never alleged in any administrative charge of discrimination.  As to the first category of allegations, none of these could support a claim of harassment or hostile work environment because they all relate to her job performance and plaintiff has not shown any evidence that such conduct was directed at her because of her race.  Causey v. Balog, 162 F.3d at 801.

As to the picture of a Klansman left on a library table, such isolated act, while repugnant, cannot establish a hostile work environment or harassment. Indeed, the only evidence is that when plaintiff reported the incident to her employer, it took appropriate action and caused the incident to be investigated by the school's law enforcement officers. There is no evidence that such picture was directed to her or that its placement should be imputed to defendant.

Such isolated incident, taken as true, does not amount to severe or pervasive racial harassment. "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir.), cert. denied, 117 S. Ct. 70 (1996). Rather, its purpose is to protect a "reasonable person" from an environment in which abuse is sufficiently severe or pervasive as to alter the conditions of his or her employment. Id., at 753 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 19 (1993), and Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).

There is little doubt that a picture of a Klansman left laying around on a table or displayed in a school setting without educational context would be offensive to any reasonable person; however, there is no evidence that such display was anything other than an isolated incident by an unknown perpetrator or that plaintiff was the intended victim of such offensive display. Further, there is no evidence that defendant failed to appropriately respond to the incident when it was reported or that it was in any way responsible for or condoned the conduct. Indeed, the only evidence is that defendant responded in a most appropriate manner by causing the incident to be investigation by law enforcement.

In Hartsell v. Duplex Products, Inc., 123 F.3d 766 (4th Cir. 1997), the appellate court held that Title VII "prohibits only harassing behavior that is so severe and pervasive as to render the workplace objectively hostile." Id., at 773. In Harris v. Forklift Systems, Inc.,

supra, the Supreme Court held that isolated comments are simply not enough to give rise to a Title VII claim of unlawful harassment. Severe conduct is conduct that would be extreme, amounting to a change in the terms and conditions of employment. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998). In determining whether there was a hostile or abusive work environment, the court looks to the totality of the circumstances. Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). In making such a determination, the Supreme Court requires courts to consider

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Harris v. Forklift Sys., Inc., supra, at 23. The court has considered the offensive picture within the totality of the circumstances presented in this case. Harris v. Forklift Sys., Inc., supra. Considering all the evidence of record, plaintiff has come forward with no probative evidence upon which a reasonable person could conclude that she was being harassed or subjected to a hostile work environment under these circumstances, or that such was so severe or pervasive as to render the workplace objectively hostile.

The court will grant summary judgment on this claim.

### E. Plaintiff's Miscellaneous, Unexhausted Claims

As defendant points out in its Memorandum of Law (#10), at p. 24, plaintiff has alleged additional wrongdoing at various places in her Complaint, none of which were asserted in her administrative charges before the EEOC. These complaints appear to be a list of grievances accumulated during her tenure as an employee of defendant. Because these are beyond the scope of her administrative charge, plaintiff has failed to exhaust her administrative remedies and this court lacks subject matter jurisdiction over such claims.

The court will dismiss the remainder of the complaint for want of jurisdiction.[4]

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Summary Judgment (#9) is **ALLOWED**, plaintiff's "Motion to Continue With Mediation" (#14) is **DENIED**, and summary judgment is **GRANTED** in favor of defendant and against plaintiff, and that this action is **DISMISSED** without prejudice as to the unexhausted claims outlined at page 24 of defendant's brief and **DISMISSED** with prejudice as to all other claims asserted in this action.

### Advice of Appellate Rights

In accordance with Wilder v. Chairman of the Central Classification Bd., 926 F.2d 367, 371 (4th Cir.)("while not mandated, the preferable practice is to include a statement to all final orders involving *pro se* litigants setting forth the litigants' appellate rights"), cert. denied, 502 U.S. 832 (1991), plaintiff is hereby advised of the right to appeal this decision to the Court of Appeals of the Fourth Circuit in the manner described in Rule 3, Federal Rules of Appellate Procedure, by filing a Notice of Appeal with the Clerk of this Court within the time prescribed in Rule 4, Federal Rules of Appellate Procedure, which is **30 days** from entry of this Order. Failure to file a Notice of Appeal within the first 30-day period after entry of judgment requires the filing of a motion for extension of time and a notice of appeal within the second 30-day period after entry of judgment. Fed. R. App. P. 4(a)(5). See United States ex rel. Leonard v. O'Leary, 788 F.2d 1238, 1240 (7th Cir.

---

[4] Plaintiff also mentions that she is asserting a "whistle-blower" action regarding various federal educational laws. Complaint, at 3. Plaintiff has failed to allege a cognizable claim. Generally, federal whistle-blower statutes only protect people who disclose relevant matters to appropriate supervising federal authorities or the Attorney General. Hill v. Mr. Money Finance Co. & First Citizens Banc Corp., 2009 WL 279086, *10 -11 (6th Cir. February 6, 2009); Lippert v. Cmty. Bank, Inc., 438 F.3d 1275, 1279 (11th Cir.2006).

1986).

Signed: May 16, 2011

Max O. Cogburn Jr.
United States District Judge